*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0371p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SOLOMON J. STALLINGS,

        *Petitioner-Appellant,*

    *v.*

DAVID BOBBY, Warden,

        *Respondent-Appellee.*

No. 05-3103

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 03-01907—Peter C. Economus, District Judge.

Argued: September 11, 2006

Decided and Filed: October 4, 2006

Before: DAUGHTREY and COLE, Circuit Judges; BERTELSMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Jill E. Stone, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Gregory T. Hartke, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jill E. Stone, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Gregory T. Hartke, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cleveland, Ohio, for Appellee.

---

## OPINION

---

    MARTHA CRAIG DAUGHTREY, Circuit Judge. The petitioner, Solomon Stallings, is an Ohio prison inmate serving a six-year sentence for a 2001 conviction on a drug possession charge. At the conclusion of his direct appeal and post-conviction litigation in state court, he filed a petition in federal court under 28 U.S.C. § 2254, seeking habeas relief based on a violation of his right to confrontation under the Sixth Amendment. Stallings contended that a hearsay statement by Alexander Quarterman, an acquaintance of Stallings, accusing Stallings of illegal possession of drugs and firearms was introduced at trial in violation of the Supreme Court's holding in *Lilly v. Virginia*, 527 U.S. 116 (1999), and that this error is not harmless under *Delaware v. Van Arsdall*,

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

475 U.S. 673 (1986). We agree and, therefore, find it necessary to reverse the district court's denial of relief.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

This case began with a traffic stop of a vehicle driven by defendant Stallings and in which Quarterman and a man named John Penson were passengers. The officers discovered what turned out to be "fake cocaine" and counterfeit money in Quarterman's pockets and a firearm in the backseat of the car. Quarterman was arrested and subsequently admitted to police that the contents of his pockets were his. But Quarterman also told Officer Brian Simcox that because he was on parole, he did not want to "go down" on a weapons charge and offered to implicate Stallings as the owner of the gun if the officers would "help him." Simcox "agreed with him that if he cooperated . . . [he] would talk to a prosecutor."

Quarterman told Simcox that Stallings kept a dark green bag containing two additional weapons and a cache of drugs and money at a house on Crosier Street. As a result of this information, the police attained a search warrant for 216 West Crosier, the home of a woman named Angela Roberts. Executing the warrant, the police found a duffel bag with the guns in the closet, crack cocaine in a drawer beneath Roberts's bed, several pieces of crack cocaine on the headboard, a single-edged razor blade, and a digital scale. Roberts, absent when the search began, arrived home during the search and was detained and handcuffed by the police.

When first questioned about the contraband, Roberts told police that the items belonged to Quarterman. She apparently confirmed that the items were Quarterman's when asked a second time. However, after Roberts was taken into police custody and her children were placed with Children's Services, she gave police a written statement saying that she had lied and the contraband actually belonged to Stallings. Based on her statement and, presumably, that of Quarterman, a state grand jury returned a five-count indictment charging Stallings with possession of cocaine, having weapons while under a disability, possession of criminal tools, and two counts of endangering children.

Stallings waived his right to a jury and submitted his case to a bench trial. The parties stipulated that the contraband seized from the house on West Crosier Street had been tested for fingerprints and that the single fingerprint found did not match those of Stallings, Quarterman, or Roberts.

At trial Roberts described her relationship with Stallings, saying that they had dated on and off for about a year, ending three or four months prior to his arrest, and that he would at times stay at her house, although she did not consider him her "boyfriend." She testified that Stallings brought a duffel bag containing three firearms to her residence, and a few days later a bag containing crack cocaine, asking that she keep them there for him. Roberts conceded that she had originally lied to the police but said that she had done so because Stallings told her to do so. She also stated that he asked her not to testify against him, but she told him that she was "looking at going to the penitentiary over this also and losing [her] children."

The prosecution attempted to call Quarterman as a witness. The court advised Quarterman of his right not to testify and asked if he had spoken to his lawyer. Quarterman replied, "I told him that the detective forced me to say everything the first day. I said I told him I wasn't going to testify. He still rubbed me down. I told him everything on that paper is bogus." Quarterman then invoked his right not to testify.

That invocation by Quarterman set the stage for the error that becomes dispositive here. In an effort to get Quarterman's previous statement into evidence, the state called Officer Simcox, the officer involved in the vehicle stop, the discovery of contraband in the car, and the ensuing arrest of Quarterman. Over defense counsel's objection, Simcox repeated the statements that Quarterman

had given inculpating Stallings. The court allowed the hearsay statements, declaring Quarterman as unavailable under Ohio Rule of Evidence 804(A). Simcox described his meeting with Quarterman:

> I [M]irandized him, read him his rights, made sure that he understood them. He told me he wanted to come straight with me [regarding] the gun we found in the car the previous day.

> He told me that the gun belonged to Solomon Stallings and that he could tell me where Solomon had two more assault rifles and 2 ounces of crack cocaine . . . .

> He stated that if he helped me with Solomon, he wanted me to know that that gun in the car the other night wasn't his . . . . I agreed with him that if he cooperated with us I would talk to a prosecutor but couldn't make any promises.

Simcox testified that after giving details about where the other weapons and drugs were located, Quarterman volunteered to put his statement in writing. Simcox read the statement:

> Up on Crosier there is a green gym bag. It is upstairs. The lady's name is Angie. I know it's in there. I've been over there several times. It's Solomon Stallings' gun and dope. Angie sells drugs for him. There's an AP-9 and a rifle in the gym bag. It's all in the house. The last time I seen it, the guns, was Sunday the 7th in the afternoon, and drugs.

At the conclusion of the state's case, the court granted in part the petitioner's motion for acquittal, dismissing all counts of the indictment except the one charging possession of cocaine. At the conclusion of the trial, the court found Stallings guilty of possession of cocaine and sentenced Stallings to six years' imprisonment.

On appeal, the Ohio Court of Appeals affirmed the conviction, but remanded for re-sentencing. *State v. Stallings*, No. 20612, 2002 WL 274458 (Ohio Ct. App. Feb. 27, 2002). In addressing the Confrontation Clause claim, the state appellate court reviewed the trial court's ruling under state evidentiary and the two-pronged reliability analysis of *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), reaching the following conclusions:

> We have already determined that Quarterman was "unavailable" to testify; therefore, we must determine whether Quarterman's statements possess the required indicia of reliability.

> Quarterman did not attempt to completely exonerate himself and shift the blame to Defendant. In fact, Quarterman admitted that the "fake dope" and counterfeit money belonged to him. Furthermore, Quarterman was not given a promise or any consideration in exchange for his statement. Finally, Quarterman gave his statement to Officer Simcox after having been fully advised of his rights. Therefore we find that Quarterman's statements satisfied the indicia of reliability prong and did not violate the Confrontation Clause.

2002 WL 274458, at *3. The Ohio Court of Appeals actually cited *Lilly* but did not make any effort to identify the central holding of that case or apply it to the facts before the court. *Id.*

On remand, the trial court imposed the same six-year term of imprisonment. The Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Stallings then initiated litigation seeking post-conviction relief in the state courts, but without success. He also filed a motion for a new trial based on "newly discovered

evidence" consisting of an alleged recantation of her trial testimony by Angela Roberts, but that *pro se* motion met with a similar lack of success in the trial court and on appeal.

On September 10, 2003, Stallings, newly with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising as a single ground for relief that he had been "denied the right to due process of law and the right to confront adverse witnesses in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the trial court admitted hearsay evidence in support of conviction." The parties submitted additional briefing on the application of *Crawford v. Washington*, 541 U.S. 36 (2004), the major Confrontation Clause decision from the Supreme Court that had been announced in the interim.

The case was initially referred to a magistrate judge, who extensively analyzed the petitioner's habeas claim and concluded that "the trial court violated the Confrontation Clause by admitting the out-of-court statements made by Quarterman and, in turn, that the Ohio Court of Appeals' decision is objectively unreasonable in light of clearly established law." In reaching this conclusion, the magistrate judge focused specifically – and appropriately – on *Lilly v. Virginia*. But despite his recognition of the constitutional violation, the magistrate judge recommended that the district court deny relief on the ground that the introduction of Quarterman's statement was harmless error because it was "merely cumulative" of Roberts's testimony and, therefore, "did not have a substantial and injurious influence on the jury's [*sic*] verdict." The district court followed the magistrate judge's recommendation and dismissed the petition.

We now have the district court's decision before us, for review on the following certified question: "Did the admission of hearsay, found by the district court to be contrary to *Lilly v. Virginia*, 527 U.S. 116, 137-140 (1999), have a substantial influence on the verdict?" Reviewed under the appropriate constitutional standard, we conclude that the question must be answered in the affirmative.

## II. *DISCUSSION*

### A. Standard of Review

When evaluating a petition for habeas corpus, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *Hill v. Hofbauer*, 337 F.3d 706, 710 (6th Cir. 2003). Because Stallings filed his petition in 2003, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), applies. Under AEDPA, we may grant a writ of habeas corpus only if the state trial court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state trial court decision is "contrary to" federal law under the AEDPA standard "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision is an "unreasonable application" of federal law if the court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* In the case at hand, the district court found that the state court decision to admit part of Quarterman's statement was contrary to clearly established federal law regarding the Confrontation Clause. Nevertheless, the district court found the error harmless.

## B. The Confrontation Clause Violation

As the magistrate judge's report adopted by the district court noted, it is clear that Quarterman's statement would be inadmissable under the current state of the law because it was obviously testimonial in nature. *See Crawford v. Washington*, 541 U.S. 36, 51, 54 (2004). ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquintance does not."  "That interrogators are police officers . . . does not change the picture . . . .")  Indeed, that was Quarterman's entire purpose in making the statement under the circumstances that he did.  The question, however, is not whether the testimony could be introduced at trial post-*Crawford*, but whether it was admissible under clearly-established Supreme Court precedent at the time the petitioner's conviction became final in 2002, which was some two years prior to the Court's decision in *Crawford*. *See Teague v. Lane*, 489 U.S. 288, 310 (1989).  ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.")

Prior to *Crawford*, a hearsay statement was considered admissible for purposes of the Confrontation Clause if the statement bore "adequate 'indicia of reliability,'" which could be inferred if the evidence fell "within a firmly rooted hearsay exception." *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).  In 1999, a plurality of the Supreme Court held that "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." *Lilly v. Virginia*, 527 U.S. 116, 134 (1999) (footnote omitted).  In doing so, the Court said:  "It is clear that our cases consistently have viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those 'hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability.'"  *Id.* at 133 (alteration in original) (quoting *White v. Illinois*, 502 U.S. 346, 357 (1992)); *see also Williamson v. United States*, 512 U.S. 594, 599 (1994) ("that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts").  The district court rejected the Ohio Court of Appeals decision that Quarterman's statements had particularized guarantees of trustworthiness, correctly noting that the state court's conclusion could not be reconciled with *Lilly*, 527 U.S. at 137-40.

But the district court ultimately denied Stallings's petition.  The report and recommendation, as adopted by the district court held that "the admission of Quarterman's statements, although violative of the Confrontation Clause, did not have a substantial and injurious influence on the jury's verdict because other evidence corroborated the hearsay statements that the drugs and guns belonged to Petitioner."  In this regard, the district court pointed to Angela Roberts's uncontradicted testimony that "the drugs and guns found in her closet belonged to Petitioner" and concluded that "Quarterman's statements were merely cumulative and the admission of this evidence was harmless."

In federal habeas cases, it is true, a constitutional error can be considered harmless unless it "had 'a substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  "If, however, 'the matter is so evenly balanced' that this Court has 'grave doubt' as to the harmlessness of the error, it 'should treat the error, not as if it were harmless, but as if it affected the verdict ( *i.e.*, as if it had a 'substantial and injurious effect or influence in determining the jury's verdict').'" *Stapleton v. Wolfe*, 288 F.3d 863, 867 (6th Cir. 2002) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995));  *see also O'Neal*, 513 U.S. at 445 ("[W]hen a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief.").

What the district court omitted in assessing harmlessness in the instant case is the analysis mandated by the Supreme Court in *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). There the Court held that in determining whether a Confrontation Clause violation is harmless, courts must consider such factors as "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684. Had the district court actually applied such an analysis to the facts of this case, we think the outcome in the court below would have been different.

For example, in terms of "the importance of the witness'[s] testimony in the prosecution's case," it would be difficult to conclude that Quarterman's statement to police did not play an important role in the prosecution's case, given that nearly half of the prosecution's closing argument was focused on Quarterman's statements. The remaining factors also cut in favor of Stallings. The respondent argues that although Quarterman's statement was emphasized in the prosecution's case-in-chief and closing arguments, Roberts's testimony was sufficient – standing alone – to establish guilt beyond a reasonable doubt. However, this argument overlooks the fact that Roberts's testimony was itself impeached in several respects and that Quarterman's statement undoubtedly served as necessary corroboration in the mind of the fact-finder.

In reviewing a similar habeas issue, presented in the same posture as this petitioner's, we were met with a state court's determination that an unreliable hearsay statement, erroneously introduced on tape, was harmless error because the evidence was corroborated in part by other witnesses' testimony and was therefore cumulative. *See Stapleton v. Wolfe*, 288 F.3d 863, 866 (6th Cir. 2002). But, as we pointed out in granting relief, "Stapleton's jury could have believed that the Foreman's statements and Studer's taped statements 'reinforced and corroborated each other.'" *Id.* at 868 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 299 (1991)). There, as here, it seems apparent that without one statement, the fact-finder might not have believed the other.

In an even more recent case, we likewise considered the reliability of a witness, Wright, whose testimony was corroborated by the inadmissible hearsay statement of Ash, introduced in violation of the Confrontation Clause. There, we said:

> [W]e view Wright's testimony with some skepticism . . . . Wright was an alleged accomplice . . . . He thus had a substantial interest in shifting blame to Fulcher. Although we do not question that it was the jury's responsibility to assess Wright's credibility (including how well his testimony held up on cross-examination), we must consider the likelihood that Ash's statements *bolstered* Wright's account in the jury's eyes.

*Fulcher v. Motley*, 444 F.3d 791, 809 (6th Cir. 2006) (emphasis in original).

In this case, it is entirely possible that the trial judge would not have accepted Roberts's testimony, standing alone, as a sufficient basis to convict. Although the trial judge was in the best position to weigh Roberts's credibility, Roberts had several incentives to implicate Stallings falsely. Quarterman's statement implicated Roberts's involvement as Stallings's accomplice, someone who, according to Quarterman, was selling those drugs for Stallings. Moreover, at a minimum, Roberts knew of its presence in her home. Her testimony was contradicted by her first two statements to the police that the contraband found in her home belonged to Quarterman, not Stallings, and she admitted at trial that she was influenced to make a third statement to police implicating Stallings only after the officers indicated that she was in danger of going to prison and losing custody of her children.

Significantly, there was no other evidence connecting Stallings to the cocaine. The only fingerprints found on the evidence were conclusively *not* Stallings's. In light of the importance of Quarterman's statement, the fact that the fact-finder might not have accepted Roberts's testimony without the corroboration from Quarterman's statement, and the lack of any physical or other evidence linking Stallings to the cocaine, we find that the matter is at least "'evenly balanced'" and, as a result, that we are left with "'grave doubt'" as to the harmlessness of the error in admitting the statement. *Stapleton v. Wolfe*, 288 F.3d at 867 (quoting *O'Neal v. McAninch*, 513 U.S. at 435). It therefore follows, under the rubric of *O'Neal v. McAninch*, that we are required to "treat the error, not as if it were harmless, but as if it affected the verdict." *Id.*

In reaching this conclusion, we reject the respondent's argument that because Stallings was convicted at a bench trial, we should presume that the judge who found Stallings guilty "considered only relevant and admissible evidence in reaching the verdict," citing *United States v. Joseph*, 781 F.2d 549, 552 (6th Cir. 1986). But in *Joseph*, a RICO prosecution based on a mountain of evidence, we also noted that the introduction of inadmissible evidence should be deemed harmless only "'if there is relevant and competent evidence to establish defendant's guilt in the absence of the objectionable proof.'" *Id.* at 553 (quoting *United States v. McCarthy*, 470 F.2d 222, 224 (6th Cir. 1972)). While not challenging the relevance of the *only* other evidence against Stallings, we have commented on its dubious competence. Moreover, because the trial judge affirmatively ruled that Quarterman's statement was admissible, we find the presumption even more strained and conclude that it is unreasonable to assume that the judge did not consider Quarterman's hearsay statement in evaluating the evidence.

## III. *CONCLUSION*

For the reasons set out above, we REVERSE the judgment of the district court denying relief and REMAND with instructions to the district court to issue the writ of habeas corpus, conditioned upon the state's failure to retry the defendant within a reasonable amount of time to be determined by the district court.