NOT FOR PUBLICATION
File Name: 08a0392n.06
Filed: July 1, 2008

NO. 06-4309

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

GREGORY D. HAWKINS,

       Petitioner-Appellant,

                                        ON APPEAL FROM THE

v.                                   UNITED STATES DISTRICT
                                         COURT FOR THE NORTHERN

RICH GANSHIMER, Warden,         DISTRICT OF OHIO

       Respondent-Appellee.

_____/

BEFORE:    GUY, SUHRHEINRICH and GIBBONS, Circuit Judges.

       **SUHRHEINRICH, Circuit Judge.**  Gregory Hawkins, an Ohio prisoner, appeals from the

district court's order denying his petition for a writ of habeas corpus.  Hawkins raises the issue of

whether the state court unreasonably applied clearly established federal law in contravention of the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) in ruling that the admission of a

tape-recorded statement by a nontestifying co-defendant violated his Confrontation Clause rights.

Because we conclude that any error resulting from the tape's admission was harmless, we AFFIRM.

**I. Background**

      The following facts are derived from the opinion of the Ohio Court of Appeals.  *See State*

*v. Hawkins*, No. 2001-P-0060, 2002 WL 31895118 (Ohio Ct. App. Dec. 31, 2002), *appeal denied*,

787 N.E.2d 1231 (Ohio 2003) (No. 2003-0326).  Around 6 a.m. on October 30, 2000, Latasha

Franklin awoke in the residence she shared with Ronald Henderson and went to retrieve a cell phone from her car. As she returned, she saw a man and woman, later identified as David Clark and Robin Stewart, standing on the sidewalk. Clark asked if Henderson was home. Franklin said he was asleep. Clark pulled out a gun and told Franklin to open the door. When they entered, the house alarm system was triggered, waking Henderson. Henderson retrieved his gun and hid it under the bedcovers. Stewart and Clark, both armed, forced Franklin back into the bedroom at gunpoint and bound both Franklin and Henderson with duct tape.

As Stewart and Clark searched the house for valuables, Henderson managed to recover his gun. He shot Stewart, causing Clark and Stewart to flee. Henderson observed Clark and Stewart run to a blue van parked up the street. Henderson also observed Hawkins waiting outside the van. Henderson recognized the van as belonging to Jellaketa Jackson, the babysitter. Hawkins was Jackson's boyfriend at the time.

Meanwhile, neighbors called the police. After speaking with Henderson and Franklin, two officers were sent to Jackson's apartment. Outside they observed Hawkins sitting in the driver's seat of Jackson's van. Jackson allowed the officers to search her apartment. Jackson admitted that she owned the van. According to the officers, she became uncooperative when they asked to search the van. Hawkins and Jackson told the officers that no one was inside the van. Hawkins also gave the police three different reasons why he was in the car: to take his children to school, to go to work, and to go to the store to get cigarettes.

The officers believed someone was hiding in the back of the van because it was sitting low in the rear and the windows were foggy from the inside. They searched the van and found Stewart

-2-

and Clark hiding. They arrested all four and took Stewart to the hospital. At the hospital, Stewart confessed to the burglary and stated that Hawkins had driven her and Clark to Henderson's and Franklin's residence.

Hawkins was charged with complicity to commit aggravated burglary, in violation of Ohio Rev. Code § 2923.03(A)(1)-(3) and § 2911.11(A)(2), (B), with a firearm specification in violation of Ohio Rev. Code § 2929.14(D) and § 2941.145. Hawkins pleaded not guilty and was tried before a jury. Prior to trial, Stewart indicated that she intended to invoke her Fifth Amendment right against self-incrimination. Petitioner moved to exclude the taped confession Stewart gave in the hospital. The trial court denied Petitioner's motion.

At trial, the State introduced Stewart's taped confession, and the jury found Hawkins guilty of complicity to commit aggravated burglary with a firearm specification. Hawkins was sentenced to eight years' imprisonment for complicity to commit aggravated burglary to run consecutively with a three-year term for the firearms specification.

On direct appeal, the Ohio Court of Appeals found that Stewart's tape-recorded statement did not violate Hawkins' confrontation clause rights since the declarant was unable to testify and the statement bore adequate "indicia of reliability." In addressing the Confrontation Clause claim, the Ohio Court of Appeals utilized state evidentiary rules and the rule in *Ohio v. Roberts*, 448 U.S. 56 (1980), reasoning that:

> To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." [*Idaho* v.] *Wright*, 497 U.S.[805,] 822 (1990). The guarantees of trustworthiness must be shown from the totality of the circumstances. *Id*. at 819. In the case sub judice, we have already

determined that [Stewart] was "unavailable" to testify; thus, we must determine whether her taped statement possessed the required indicia of reliability.

After reviewing the transcript from her taped statement, [Stewart] did not attempt to completely exonerate herself and shift the blame to appellant, [Clark], and [Jackson]. In fact, she admitted that she was involved in the incident that took place at the residence of [Henderson] and [Jackson] on October 30, 2000. Furthermore, [Stewart] was not given a promise or any consideration in exchange for her statement. Finally, [Stewart] gave her statement to [the officers] after she was fully advised of her rights. Therefore, it is our view that [Stewart's] statement satisfied the indicia of reliability prong and did not violate the Confrontation Clause of the Sixth Amendment to the United States Constitution. Accordingly, appellant's first assignment of error is overruled.

*Hawkins*, 2002 WL 31895118, at *6. The Ohio Supreme Court denied Hawkins leave to appeal.

Hawkins then filed a petition for writ of habeas corpus. As the district court pointed out, although the state court held that Stewart's statement did not fall within a firmly rooted hearsay exception, it nonetheless "bore sufficient indicia of reliability" for three reasons:

In the instant case, the state appellate court found that although Stewart's statement did not fall within a firmly rooted hearsay exception, it nonetheless "satisfied the indicia of reliability prong." *State v. Hawkins*, 2002 WL 31895118 ¶ 36. The court reasoned that Stewart's statement met the indicia of reliability prong since Stewart "did not attempt to completely exonerate herself and shift blame to appellant," she "was not given a promise or any consideration in exchange for her statement," and she "gave her statement to [the officers] after she was fully advised of her rights." *Id*.

*Hawkins v. Ganshimer*, 2006 WL 2481987, at *6. The district court held that these three reasons were inconsistent with and an unreasonable application of clearly established federal law:

First, the Supreme Court has stated that "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts." *Williamson v. United States*, 512 U.S. 594, 599 (1994). Therefore, the self-inculpatory nature of Stewart's statement does not adequately guarantee the trustworthiness of her statements against Hawkins.

-4-

Second, although Stewart received no promises or consideration in exchange for her statement, the Supreme Court has stated that it is unnecessary for the police to make any promises of leniency for a "suspect to surmise that speaking up, and particularly placing blame on his cohort may inure to his advantage." *Lilly* [*Virginia*], 527 U.S. [116,]139 (1999). Therefore, the state court incorrectly reasoned that the absence of promise or consideration provided the "adequate indicia of reliability" needed to admit the statement.

Finally, "a suspect's consciousness of his *Miranda* rights has little, if any, bearing on the likelihood of truthfulness of his statements. When a suspect is in custody for his obvious involvement in serious crimes, his knowledge that anything he says may be used against him militates against depending on his veracity." *Lilly*, 527 U.S. at 138. Here, the state court's reliance on Stewart's knowledge of her Miranda rights is misplaced and is an unreasonable application of federal law. Accordingly, the Court finds that the state court misapplied Supreme Court precedent when determining the admissibility of Stewart's statement.

*Hawkins v. Ganshimer*, 2006 WL 2481987, at *6.

The district court nonetheless held that the error was harmless, and denied the petition. The district court then issued a certificate of appealability as to whether "the trial court's admission of a separately indicted co-defendant's tape-recorded confession, which was inculpatory of both the co-defendant and the Petitioner, violated the Fifth, Sixth, and Fourteenth Amendments."

## II. Analysis

Petitioner's appeal is governed by the AEDPA. Under the AEDPA, a writ will not be granted unless the state adjudication resulted in a decision that was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). The phrase "clearly established Federal law, as determined by the

Supreme Court," "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (quoting *Williams*, 529 U.S. at 411). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id*. at 76.

The state court's factual findings are presumed correct unless proven to the contrary by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). We review the district court's denial of habeas relief de novo. *Combs v. Coyle*, 205 F.3d 269, 277 (6th Cir. 2000).

### A. Admissibility of Confession

The Sixth Amendment Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that testimonial out-of-court statements by witnesses are barred under the Confrontation Clause unless the witnesses are unavailable, and the defendant had a prior opportunity to cross-examine them, regardless of the reliability of the statements. *Crawford* overruled *Roberts*, which held that an unavailable witness's statement against a criminal defendant nonetheless may be admissible if the statement "bears 'adequate indicia of reliability,'" which the Court defined as either (1) falling within a "firmly rooted hearsay exception," or (2) showing "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66.

Stewart's statement would be inadmissible under *Crawford* because it is clearly testimonial. *See Crawford*, 541 U.S. at 54; *Stallings v. Bobby*, 464 F.3d 576, 581 (6th Cir. 2006). *Crawford* does not apply retroactively, however. *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005). Thus, it cannot be applied to the facts of Petitioner's case because *Crawford* was decided two years after the final state court decision was rendered. *See Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004) (noting that "review is conducted in light of the law as it existed at the time of the final state court decision"). The proper question then is whether the statement was admissible under clearly-established Supreme Court precedent at the time when the Ohio Court of Appeals rendered its decision.

In *Stallings*, 464 F.3d at 576, this Court addressed the issue presented in this case–whether the admission of a non-testifying witness's hearsay statements to the police was contrary to the Supreme Court's holding in *Lilly v. Virginia*, 527 U.S. 116 (1999), and other Supreme Court precedent. In holding that the state court decision was an unreasonable application of federal law, we reasoned as follows:

> Prior to *Crawford*, a hearsay statement was considered admissible for purposes of the Confrontation Clause if the statement bore "adequate 'indicia of reliability,'" which could be inferred if the evidence fell "within a firmly rooted hearsay exception." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In 1999, a plurality of the Supreme Court held that "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." *Lilly v. Virginia*, 527 U.S. 116, 134, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (footnote omitted). In doing so, the Court said: "It is clear that our cases consistently have viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those 'hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability.'" *Id.* at 133, 119 S.Ct. 1887 (alteration in original) (quoting *White v. Illinois*, 502 U.S. 346, 357, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)); *see also Williamson v. United States*, 512 U.S. 594, 599, 114 S.Ct.

-7-

2431, 129 L.Ed.2d 476 (1994) ("that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts").

*Stallings*, 464 F.3d at 576; *see also Hill v. Hofbauer*, 337 F.3d 706 (6th Cir. 2003).[1]   Thus, for the

[1]In *Hill*, we addressed an analogous situation.  The issue there was whether the state court admission of defendant's custodial confession, which inculpated both the defendant and his co-defendants, was contrary to and an unreasonable application of Supreme Court precedent.  There, however, the state court decision was issued prior to *Lilly.*  In holding that the state court decision was an unreasonable application of clearly established Supreme Court precedent at the time the state court ruled, we reasoned as follows:

> In *Lilly*, a plurality unequivocally stated that confessions made by a co-defendant inculpating not only himself but his co-criminals are "inherently unreliable" and not within a "firmly rooted" hearsay exception for statements against penal interest.  *Lilly*, 527 U.S. at 131, 119 S.Ct. 1887. Accordingly, the Court ruled that under the framework discussed in *Roberts*, a co-defendant's custodial confession cannot be entered into evidence absent additional "guarantees of trustworthiness." The Court "distinguishe[d] accomplices' confessions that inculpate themselves and the accused as beyond a proper understanding of the against penal-interest exception because an accomplice often has a considerable interest in 'confessing and betraying his cocriminals.'" *Id*. at 131, 119 S.Ct. 1887 (citing 5 J. Wigmore, Evidence § 1477, at 358, n. 1 (J. Chadbourn rev. 1974)). The Court further distinguished the confessions of accomplices from the statements of co-conspirators made in furtherance of a conspiracy, which have traditionally been held trustworthy, because in the case of custodial confessions, the government is typically "involved in the statements' production." Therefore such statements do not bear the same indicia of reliability as is present in statements made of the declarant's own accord. *See id.* at 137, 119 S.Ct. 1887.

> Moreover, the Supreme Court expressly referenced past Supreme Court cases in achieving its result in *Lilly*, stating that "[i]t is clear that our cases consistently have viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those 'hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability.' " *Id*. at 133, 119 S.Ct. 1887 (quoting *White v. Illinois*, 502 U.S. 346, 357, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)) (emphasis added) (alterations in original); . . . *Lilly*, *id*. at 131 (citing *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)).

> . . . .

> *Douglas*, *Bruton*, and *Lee* indicate that the Supreme Court has held statements made

reasons articulated in *Stallings*, the state court decision is an unreasonable application of Supreme Court precedent as it existed when the state court ruled. Furthermore, the state court of appeals in *Stallings* presented the same three reasons articulated by the appellate court in this case. *See Stallings*, 464 F.3d at 579 (quoting Ohio Court of Appeals ruling). Thus, under *Stallings*, and for the reasons articulated by the district court in this case, the Ohio Court of Appeals' ruling violated the standards set forth under 28 U.S.C. § 2254(d).

## B. Harmless Error

The remaining question is whether introduction of the tape at trial was harmless. Confrontation Clause errors are subject to harmless-error analysis. *See, e.g., Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Chapman v. California*, 386 U.S. 18, 21-22 (1967). In *Fry v. Pliler*, ---U.S. ---, 127 S.Ct. 2321 (2007), the Court held that a federal habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993) ], whether or not

_____

to police to closer scrutiny. Although Rule 804(b)(3) provides a hearsay exception for statements against the declarant's interest, this rule has been consistently disregarded by the Supreme Court in situations where the declarant's custodial confession at all implicates somebody else. Such statements are never truly against the declarant's penal interest because a defendant in custody always has a motivation to implicate and pass the blame to another, even if in the slightest. *See Lee*, 476 U.S. at 541, 106 S.Ct. 2056. As the Supreme Court stated in *Williamson v. United States*, 512 U.S. 594, 599-600, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), such statements are inherently unreliable because "[o]ne of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature."

*Hill,* 337 F.3d at 713-14, 717. *See also Fulcher v. Motley*, 444 F.3d 791, 802 (6th Cir. 2006).

the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*." 127 S. Ct. at 2328; *see also Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007). In determining whether a Confrontation Clause error was harmless, the court must consider "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, ... and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684.

Petitioner was convicted of complicity to commit aggravated burglary. Ohio law defines complicity as follows:

> (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
> (1) Solicit or procure another to commit the offense;
> (2) Aid or abet another in committing the offense;
> (3) Conspire with another to commit the offense in violation of section 2923.01of the Revised Code;
> (4) Cause an innocent or irresponsible person to commit the offense.

Ohio Rev. Code § 2923.03. "[T]he evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime. . . ." *State v. Johnson*, 754 N.E.2d 796, 801 (Ohio 2001). An accomplice's criminal intent may be inferred from the circumstances surrounding the crime. *Id.* The mere presence of an accused at the scene of the crime is not sufficient. *Id.* at 799.

The district court concluded that the error was harmless, "find[ing] a sufficient basis for the jury to conclude, absent Stewart's statement, that Hawkins assisted Clark and Stewart with the burglary."

On appeal Hawkins argues that the district court was wrong because, of the State's twenty-two witnesses, only Stewart, Franklin, and Henderson offered testimony relating to his alleged complicity in the burglary independent of the taped statement. Hawkins contends the testimony of Franklin and Henderson regarding his involvement was "thoroughly impeached and rendered useless." Hawkins points out that Franklin testified that the night before the burglary Henderson got mad and threatened to put his two guns "to work" on her for refusing to take him to a junk yard to obtain a window for a car. However, on cross-examination, Franklin admitted that Henderson did not say he would put the guns "to work."

Hawkins also challenged Henderson's testimony that he jumped through a second-floor window and observed Clark and Stewart run to a blue van parked on the side of the street. Hawkins claims that this conflicted with the testimony of several neighbors, who stated that they saw two individuals running from Franklin's house, but did not see a blue van. One of the neighbors, Ted Young, testified that he heard shouting outside around 6:30 a.m. and that he saw only a red car. Another neighbor, David Barnwell, testified that as he was scraping frost off his car window, he saw Henderson break through the upstairs window and two African-Americans emerge from Henderson's house and run up the street, and that he did not see any vehicles parked on the street at that time. Barnwell added that he is the head of neighborhood watch and he would have called the police had he seen an unfamiliar car. Neighbor, Randy Ruchotze, testified that he heard glass breaking; that he saw two persons running, one male and one female; and that there were no vehicles parked on the street at that time. Lastly, Hawkins notes that on cross-examination Henderson acknowledged that

he identified the gun as belonging to Jackson only and not to Hawkins, despite his earlier testimony that he recognized the gun as Hawkins' because it jammed.

However, as the district court observed, based on the facts found by the Ohio Court of Appeals, there was other testimony implicating Hawkins in the burglary. The officers testified that when they arrived at the scene, Henderson said he knew who committed the act and directed the officers to Hawkins' and Jackson's home. The officers went to Jackson's home and found Hawkins outside sitting in a blue van on the driver's side. Hawkins gave three different explanations for being in the van. Jackson stated that nobody was in the van, and she and Hawkins became uncooperative when the officers asked if they could search the van. The officers found Stewart and Clark hiding in the van.

Viewed collectively, this evidence provided independent circumstantial proof while also corroborating Henderson's and Jackson's testimony on material points, that Hawkins was attempting to help Clark and Stewart commit the burglary. As the district court held:

> In particular, the Petitioner's presence in the van, his inconsistent responses as to why he was leaving in the van, the change in his attitude when the officers asked to search the van, and the fact that the officers ultimately found Clark and Stewart at the very location and in the precise vehicle that Henderson had described to officers provided evidence enough for the jury to infer that the Petitioner's role in the aggravated robbery was more than that of a mere bystander. Stewart's statement supplemented the other evidence at trial but did not tip the balance of evidence against the Petitioner. The Confrontation Clause error, therefore, did not cause a substantial nor an injurious effect or influence on the verdict and is thus harmless error.

*Hawkins v. Ganshimer*, 2006 WL 2481987, at *9. In short, for the reasons stated by the district court, we cannot say that the erroneous admission of Stewart's statement had a substantial and injurious effect on the verdict.

-13-

The cases Petitioner relies on do not help him. In each, the nontestifying witness's statement reinforced and corroborated the testimony of a witness whose testimony, standing alone, might not have provided a sufficient basis to convict because it had otherwise been impeached or undermined. In *Stallings*, this Court held that the Confrontation Clause error was not harmless because the admission of the non-testifying witness's statements to police that certain drugs and money belonged to the defendant reinforced the testimony of the defendant's girlfriend that the cocaine belonged to the defendant. There, however, there was no other evidence connecting the defendant to the cocaine, and the girlfriend's testimony might not have been accepted by the fact-finder absent the corroborating statements because the girlfriend had contradicted herself and admitted at trial that she had an incentive to implicate the defendant. *Stallings*, 464 F.3d at 583. Similarly, in *Fulcher v. Motley*, 444 F.3d 791 (6th Cir. 2006), the error was not harmless where the inadmissible hearsay statement of a nontestifying witness corroborated and therefore might have bolstered the testimony of an accomplice, who had a substantial interest in shifting the blame to the defendant. *Id.* at 809. In *Stapleton v. Wolfe*, 288 F.3d 863 (6th Cir. 2002), this Court held that because a jury could have found that a nontestifying accomplice's taped statement reinforced and corroborated a testifying accomplice's statements, one statement was not merely cumulative of the other, and therefore could have had a substantial and injurious effect on the verdict. *Id.* at 868.[2] *See also Vasquez*, 496 F.3d

---

[2]Lastly, Petitioner's reliance on *State v. Clark* is also misplaced. *See State v. Clark*, Nos. 2004-334, 2004 WL 144238 (Ohio Ct. App. Jan. 16, 2006). As the district court noted:

[T]he court primarily based that holding on the fact that a previous trial of Clark resulted in a hung jury on the kidnaping charge. Accordingly, the court could not find beyond a reasonable doubt that the evidence against Clark was so strong that the jury

-14-

at 564 (holding that Confrontation Clause error in excluding impeachment evidence relating to an unavailable prosecution witness's testimony at a preliminary hearing that he saw the defendant fire a handgun was not harmless because it was the only evidence putting the gun in the defendant's hand at the time of the shooting, and the unavailable witness's testimony was the "tiebreaker" because the other prosecution witnesses had been impeached).

By contrast, in this case, as discussed above, there was sufficient independent evidence to corroborate Henderson's and Jackson's version of events.

### III. Conclusion

In sum, the judgment of the district court is **AFFIRMED.**

---

in the second trial would have convicted Clark even without Stewart's statement. Id. As such, that case does not significantly illuminate the current analysis.

*State v. Ganshimer*, 2006 WL 2481987, at *9 n.3.