**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0314n.06

**No. 10-3182**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Mar 21, 2012***

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| ERIC COOK, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner - Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| KEITH SMITH, Warden | ) | **OPINION** |
| | ) | |
| Respondent - Appellee. | ) | |
| _____ | ) | |

**Before: SILER, ROGERS, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge**. Petitioner-Appellant Eric Cook appeals the judgment of the district court denying his petition for a writ of habeas corpus. We **AFFIRM**.

**I.**

On November 23, 2003, Petitioner Cook was working as a nursing assistant at Parma Community General Hospital ("PCGH"). Around four a.m., Marlene Taylor, a patient in the skilled-nursing unit at PCGH, soiled herself and required assistance. Cook, the primary care nurse's assistant ("PCNA") assigned to Taylor, responded and cleaned Taylor. About twenty minutes later, Taylor again soiled herself; this time, nursing assistant Pamela Peoples responded because Cook was busy with another patient. Peoples testified that as she was cleaning Taylor, Cook walked in, and Taylor became "hysterical," screaming for Cook to get out. According to Peoples, Cook then stepped closer to Taylor's bed and appeared aggressive, at which point Taylor stopped talking.

Peoples informed her supervisor. Don Dietzeel, the R.N. assigned to Taylor, overheard a conversation about the incident and confirmed with Taylor that she did not want Cook in her room.

Around noon, Taylor's daughter, Georgia Gassi, visited and noticed that her mother had not eaten her lunch and appeared "real edgy" and "nervous." Gassi asked her mother what was wrong, and Taylor responded that a male nurse had inserted a finger into her vagina as he cleaned her. Gassi informed the attending nurse, Diane Placko, who in turn contacted the supervising nurse that day, Doris Schoenbeck. Schoenbeck testified that Taylor told her that Cook had been "rough when cleaning her during the night" and that Cook "had put his finger in her vagina while cleaning her up." Schoenbeck documented the incident; informed Cook that he could not return to work; and, since PCGH is a mandatory reporter, reported Taylor's allegations to the police.[1]

Officer Tom Desmarteau responded to the complaint. He testified that Taylor repeated her allegations against Cook to him and that Taylor seemed upset, embarrassed, angry, and "very concerned as to what took place." Detective Daniel Ciryak took over the investigation and interviewed Cook on November 28, 2003. In a signed statement, Cook stated that he did not know why Taylor yelled at him, but that he heard that Taylor had complained that he had cleaned her between her private area and her buttocks too hard. Cook confirmed that he had cleaned Taylor on the night in question. He asserted that although there was fecal matter in her vaginal area, he did not open her vagina – or insert a finger into her vagina – because the fecal matter was only on top of her vagina. Cook's story changed, however. Captain Robert DeSimone interviewed Cook a second

---

[1]The prosecution also called Carolyn Homola, an eighty-two-year-old woman who testified that Cook, while working at a different nursing facility in 1997, penetrated her vagina with his finger as he bathed her. Defense counsel objected to this testimony as impermissible "other acts" evidence, Fed. R. Evid. 404(b), but the trial court allowed the evidence. Cook does not contest this ruling in this appeal.

time, and took a statement, signed by Cook, in which Cook explicitly recanted his previous statement that he had not inserted a finger into Taylor's vagina. Cook disclosed that he had inserted three to four fingers wrapped in pericare cloth about a quarter of an inch into Taylor's vaginal canal area while he was cleaning her. Cook stated that this method of cleaning was approved by PCGH.

On July 7, 2004, the Cuyahoga County Grand Jury returned an indictment charging Cook with one count of rape and one count of patient abuse. Ohio Rev. Code Ann. §§2907.02, 2903.34. Cook pleaded not guilty and elected to be tried by a jury. Taylor died prior to the trial, and Cook filed a motion asserting that the admission of Taylor's hearsay statements would violate his constitutional right to confront witnesses against him. The trial court denied Cook's motion. At trial, Cook's counsel continued to object, but the court allowed Gassi, Schoenbeck, and Desmarteau to testify about Taylor's statements.

The jury convicted Cook on both counts. The trial court found Cook to be a sexual predator and sentenced him to eight years' incarceration for the rape conviction and six months' incarceration for the patient-abuse conviction, to be served concurrently. Cook timely appealed to the Ohio Court of Appeals, raising several issues, including the two he presses here. The Ohio Court of Appeals affirmed, and Cook sought review by the Ohio Supreme Court, which summarily dismissed his case as raising no substantial constitutional question.

Cook then filed a petition for habeas corpus in the Northern District of Ohio, asserting two grounds for relief: (1) Cook's Sixth and Fourteenth Amendment rights to confront the witnesses against him were violated when hearsay testimonial statements of a deceased witness were used against him; and (2) the state failed to present sufficient evidence to prove all elements of rape beyond a reasonable doubt, in violation of Cook's Fifth and Fourteenth Amendment due process

3

rights. The parties consented to having the matter decided by a magistrate judge, who denied Cook's petition and also denied a certificate of appealability. Cook sought to appeal, and we granted a certificate of appealability.

## II.

In a federal habeas appeal, this court reviews legal conclusions and mixed questions of fact and law de novo and factual findings for clear error. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) (citation omitted). Under AEDPA, a federal court may grant habeas relief only if the state court's judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 131 S. Ct. 770, 783-84 (2011). A decision is "contrary to" federal law if the state court reaches an opposite conclusion than the Supreme Court on a question of law or decides a case differently on a set of materially indistinguishable facts. *Stallings v. Bobby*, 464 F.3d 576, 580-81 (6th Cir. 2006) (citation omitted). A state court unreasonably applies federal law if the court identifies the governing legal principle, but unreasonably applies that principle to the facts. *Id.*

## III.

Cook contends that Officer Desmarteau's testimony about statements Taylor made during the investigation violated his Sixth Amendment right to confront witnesses against him. *Crawford v. Washington*, 541 U.S. 36, 69 (2004). Since the Warden does not dispute that Officer

4

Desmarteau's testimony violated the Confrontation Clause, the only issue is whether the violation was harmless. *See Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007) ("Confrontation Clause errors are subject to harmless-error analysis.") (internal citation omitted). Harmless-error review inquires whether the constitutional violation "had a substantial and injurious effect or influence in determining the jury's verdict." *Ruelas*, 580 F.3d at 411 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). Our review is guided by the *Van Arsdall* factors. *Delaware v. Van Arsdall*, 475 U.S. 673 (1986). Courts consider "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case." *Id.* at 684. Neither side has the burden of proving the error is harmless, and when the matter is so evenly balanced that we have "grave doubt" about whether the error had an effect on the jury's verdict, the error is not harmless. *Fulcher v. Motley*, 444 F.3d 791, 809 (6th Cir. 2006) (citation and quotation marks omitted). The Ohio Court of Appeals and the magistrate judge both concluded that the Confrontation Clause violation was harmless. We agree.[2]

Taylor's hearsay statements admitted through the testimony of Officer Desmarteau were cumulative and added nothing to the statements introduced through other witnesses, the admission of which are not challenged here.[3] Schoenbeck and Gassi both testified that Taylor told them Cook penetrated her vagina while he was cleaning her, and Schoenbeck read the medical records documenting Taylor's allegation. The truth of the hearsay statement to which Officer Desmarteau

---

[2]The Ohio Court of Appeals' harmless error decision is itself entitled to deference under AEDPA.

[3]Although he did so in the state appeals court, in this appeal Cook does not challenge the admission of Gassi's and Schoenbeck's testimony regarding Taylor's statements.

5

testified is not seriously in dispute: Captain DeSimone read Cook's statement that he *did* penetrate Taylor's vaginal canal.

Cook contends that in *Fulcher* the evidence was even stronger than the evidence here, and yet this court granted habeas relief. 444 F.3d at 809-11. In *Fulcher*, the court evaluated the evidence against the defendant without the testimonial statements and found the remaining evidence was very suspect, noting that, apart from the statements that violated the Confrontation Clause, "all of the remaining witnesses had a motive to lie." *Id.* at 810. Here, the remaining witnesses against Cook had no motive to lie, and Cook's reliance on *Fulcher* is misplaced. We are satisfied that Desmarteau's hearsay testimony had little, if any, effect on the verdict. Accordingly, the Confrontation Clause violation was harmless.

## IV.

Cook next contends that the prosecution did not present sufficient evidence of the elements of rape under Ohio law, and therefore the conviction violates due process. U.S. Const. amend. V, XIV. A federal court reviewing a habeas petition based on insufficiency of the evidence proceeds in two steps. First, without reweighing the evidence or substituting its judgment for that of the jury, the court must determine whether, "viewing the testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). Second, even if the court finds that no rational jury could have convicted the defendant, the habeas court must "still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id*. (citation omitted and emphasis in original); *see also Pordash v. Hudson*, 388 F. App'x 466, 467 (6th Cir. 2010).

6

Cook contends that the prosecution did not prove the element of force or threat of force. O.R.C. § 2907.02(A)(2) makes it illegal for a person to "engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Force need not be "overt or physically brutal" and can be established by showing that "the rape victim's will was overcome by fear or duress." *State v. Eskridge*, 526 N.E.2d 304, 306 (Ohio 1988) (citation omitted); *State v. Arias*, No. 04CA008428, 2004 Ohio 4443, at *31-32 (Ohio Ct. App. Aug. 25, 2004). In the absence of physical force, force is established if the defendant "creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 600 N.E.2d 661, 665 (Ohio 1992); *see also State v. Rupp*, No. 05MA166, 2007 Ohio 1561, at *30 (Ohio Ct. App. Mar. 27, 2007); *Pordash*, 388 F. App'x at 468. A "threat of force can be inferred from the circumstances surrounding the sexual conduct." *Schaim*, 600 N.E.2d at 665.

The Ohio Court of Appeals found that Taylor's age and infirmity, and Cook's status as caregiver, supported an inference of a threat of force and, therefore, the prosecution had submitted sufficient evidence of force; the magistrate judge agreed. Cook complains that this holding is based almost exclusively on statements made in *Eskridge*, *supra,* a case in which a father raped his four-year-old daughter. *Eskridge* creates an "almost automatic finding of force or threat of force" in the context of child-rape cases, based on a child's age and strength, as well as an adult's authority. *See, e.g., Rupp*, 2007 Ohio 1561 at *31. The Ohio Supreme Court limited the rationale of *Eskridge* in *Schaim*: "*State v. Eskridge* is based solely on the recognition of the amount of control that parents have over their children, particularly young children." *Schaim*, 600 N.E. 2d at 665; *cf. State v. Dye*, 695 N.E.2d 763, 766 (Ohio 1998) ("[W]e recognized *Eskridge's* continuing application in cases involving young children.").

7

The Warden concedes that the prosecution was required to make *some* showing that during the incident, Cook overcame Taylor's will by fear or duress: "In order for a defendant to overcome his victim's will by fear or duress, the defendant would have had to engage in sufficient behavior toward the victim." *Rupp*, 2007 Ohio 1561, at *41; *Pordash*, 388 F. App'x at 468. Cook argues that there was no evidence that he used physical force or engaged in conduct while he was cleaning Taylor that would have overcome her will by fear or duress. Ohio courts look at the "totality of facts and circumstances existing at the time of the alleged rape." *Rupp*, 2007 Ohio 1561, at *41. Here, there was very little testimony regarding the facts and circumstances surrounding Cook's conduct during the cleaning incident. There was testimony, however, that Taylor reported to Schoenbeck that Cook had been rough with her when he was cleaning her and that he had put his fingers in her vagina while cleaning her. This testimony, taken together with Cook's aggressive manner with Taylor, which led to her silence after being hysterical, could reasonably be seen as sufficient to establish that Cook achieved penetration of Taylor by being rough with her and overcoming her will by fear.

In order for a habeas petitioner to be entitled to relief, a state-court decision must not only be erroneous, but also objectively unreasonable. In *Davis v. Lafler*, the en banc Sixth Circuit explained that a state court's decision in a federal habeas sufficiency-of-the-evidence challenge receives "double deference" – first, deference to the jury's verdict, and second, deference to the state court's consideration of the verdict. 658 F.3d 525, 531-35 (6th Cir. 2011). Thus, in a sufficiency challenge, this court must stay its hand unless the state-court decision is "far out of line with the very general standard set forth in *Jackson v. Virginia*." *Id*. at 535.

There are no Ohio cases addressing the proofs required to establish the element of "force or threat of force" or the inferences permitted in judging whether a victim's will was overcome by fear

8

or duress in the context of a caretaker's sexual assault of an elderly and infirm victim. Considering the uncertainty in Ohio law regarding the permissible inferences in such cases, the presence of some testimony at trial that could support the required finding, and our limited review under AEDPA, we cannot say that the Ohio Court of Appeals' sufficiency determination is so far out of line that it is objectively unreasonable. Accordingly, although we are troubled by the dearth of evidence presented, we must reject Cook's due-process claim and AFFIRM the denial of the writ.

## V.

For the foregoing reasons, we **AFFIRM** the district court's judgment.