*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0296p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JASUBHAI K. DESAI,

    *Petitioner-Appellee,*

  *v.*

RAYMOND BOOKER,

    *Respondent-Appellant.*

No. 07-1684

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-74243—Marianne O. Battani, District Judge.

Argued: July 22, 2008

Decided and Filed: August 15, 2008

Before: SUTTON and COOK, Circuit Judges; ROSE, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Janet A. VanCleve, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Matthew F. Leitman, MILLER, CANFIELD, PADDOCK & STONE, Troy, Michigan, for Appellee. **ON BRIEF:** Brad H. Beaver, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Matthew F. Leitman, MILLER, CANFIELD, PADDOCK & STONE, Troy, Michigan, F. Martin Tieber, LAW OFFICE OF F. MARTIN TIEBER, Saginaw, Michigan, for Appellee.

---

**OPINION**

---

  SUTTON, Circuit Judge. A state-court jury convicted Jasubhai Desai of first-degree murder, and the trial court sentenced him to life imprisonment. In affirming his conviction, the Michigan court of appeals rejected Desai's claim that the admission of a hearsay statement of a co-defendant violated his rights under the Confrontation Clause of the Sixth (and Fourteenth) Amendment. In reviewing Desai's federal habeas application, the district court came to a contrary conclusion and ordered the State to release him from custody or grant him a new trial.

---

[*] The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

In defending the district court's decision, Desai does not claim that he is currently being held in custody in violation of the Confrontation Clause, given the twin realities that his co-defendant's statement was non-testimonial and that the Clause does not apply to non-testimonial statements. *See Davis v. Washington*, 547 U.S. 813, 823–26 (2006). He instead makes the following two-pronged attack on his conviction. Prong one: the state courts unreasonably applied Supreme Court precedent at the time of his trial and during direct review, because the Confrontation Clause at that time covered non-testimonial statements, *see Ohio v. Roberts*, 448 U.S. 56 (1980), and the state courts misapplied *Roberts*. Prong two: in accordance with the Antiterrorism and Effective Death Penalty Act (AEDPA) and *Teague v. Lane*, 489 U.S. 288 (1989), *Davis* should not be applied retroactively to defeat his claim. Because Congress has given us authority to release from custody only inmates who are currently being held in violation of the Constitution, because that is not the case with respect to Desai and because neither AEDPA nor *Teague* otherwise advances Desai's application for relief, we reverse.

I.

On November 7, 1983, James Osborn, an officer with the Woodhaven, Michigan, police department found the lifeless body of Anna Marie Turetzky in the front seat of a car in the parking lot of a Best Western Motel. Someone had strangled her.

In the early 1970s, Turetzky began working as a nurse in a medical clinic with Desai, a medical doctor. In 1976 or so, the two formed a partnership to build a clinic in Trenton, Michigan. As the office manager for the new clinic, Turetzky recruited new patients, handled public relations, oversaw personnel and managed the clinic's finances. By all accounts, the relationship between Desai and Turetzky, while financially beneficial, was strained and at times physically violent. In an effort to reduce the tension, Turetzky agreed to work out of the Trenton clinic, and Desai agreed to work out of a new clinic the partnership opened in Monroe, Michigan.

The new arrangement apparently did not solve the problem, and the conflict, including physical threats and threats of litigation, continued. In September 1983, Desai and Turetzky entered into an agreement in which Desai agreed that he would repay his portion of the money that the partnership had borrowed from Turetzky for the creation of the Monroe clinic. Turetzky was last seen alive on November 3, 1983.

In 1988, after an initial investigation of the crime came up empty, Lawrence Gorski told Woodhaven police officers that approximately six weeks after the murder, Stephan Adams, an employee in the Desai/Turetzky medical clinic, told him that he murdered Turetzky. After Gorski testified in state grand jury proceedings and hearings in 1994 and 1995, the Wayne County Prosecutor charged Adams and Desai on the theory that Desai had hired Adams to kill Turetzky in order to become the sole owner of the businesses.

Desai and Adams were tried jointly in September 2001 before separate juries. During the trial, the juries heard about the rocky, and at times physically violent, relationship between Desai and Turetzky, the threats of litigation in early 1983 by Desai to dissolve the partnership, an inquiry from Desai to Daniel Landau less than one year before the murder about whether Landau was interested in earning money as a "hitman," JA 473, and Adams' confession to Gorski.

The Desai jury convicted him of first-degree murder, and the Adams jury failed to reach a verdict. In view of the hung jury and in exchange for Adams' *nolo contendere* plea to the charge of solicitation to do great bodily harm in an unrelated case, the prosecution dismissed the remaining charges against Adams and did not retry him.

The court sentenced Desai to life imprisonment without the possibility of parole. Desai appealed to the Michigan court of appeals, which affirmed his conviction, *People v. Desai*, No.

238210, 2003 WL 22515292, at \*1 (Mich. Ct. App. Nov. 6, 2003), and the Michigan Supreme Court denied leave to appeal, *People v. Desai*, 685 N.W.2d 669 (Mich. 2004).

On November 4, 2005, Desai filed a habeas corpus petition in federal court challenging, among other aspects of the trial, the state court's admission of the hearsay statement against him on the ground that it violated the Confrontation Clause. The court granted the petition for four related reasons: Adams' statement amounted to non-testimonial hearsay (because it was given to a friend); the Supreme Court's intervening decision, *Crawford v. Washington*, 541 U.S. 36 (2004), applied only to testimonial hearsay statements; the Supreme Court's decision in *Roberts* remained the established law with respect to non-testimonial hearsay statements; and the Michigan state courts unreasonably applied *Roberts* in permitting the government to introduce Adams' statement.

## II.

"In all criminal prosecutions," the Confrontation Clause says, "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. When Desai objected to the admission of Adams' hearsay statement during the state-court trial, Supreme Court precedent established that non-testimonial hearsay statements (like Adams') implicated a defendant's confrontation rights. *See Roberts*, 448 U.S. at 66. Under the *Roberts* test, Adams' non-testimonial hearsay statement, like an out-of-court testimonial statement, could be admitted only if the individual was unavailable to testify and if the statement bore "adequate indicia of reliability." *Id.* (internal quotation marks omitted). A statement possessed "adequate indicia of reliability," the Court explained, if it fit within a "firmly rooted" hearsay exception or if it offered other "particularized guarantees of trustworthiness." *Id.* (internal quotation marks omitted).

*Roberts*, however, is no longer good law in two respects. Since Desai's trial, the Court has overruled the *Roberts* test for admitting testimonial hearsay, requiring the prosecution (with a few historical exceptions not applicable here) either to establish that the defendant has had a chance to confront the declarant or to forego relying on the out-of-court statement at all. *See Crawford*, 541 U.S. at 68. And the Confrontation Clause no longer applies to non-testimonial statements. *See Davis*, 547 U.S. at 823–26. The second change in law, in particular, presents a challenge for Desai's petition. He concedes that Adams' statement, which was made to a friend (Gorski), amounts to a non-testimonial statement, *see United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005), and he concedes that the Confrontation Clause no longer applies to non-testimonial statements. All of which prompts this question: May a habeas applicant obtain relief on the basis of a state court's allegedly unreasonable application of a Supreme Court precedent (*Roberts*) that no longer is good law (*see Crawford/Davis*)?

No, we conclude, for several reasons. *First*, before and since the passage of AEDPA, the point of the great writ has been to release individuals from custody or other equivalent consequences of a conviction because they are currently being held in violation of their constitutional rights. As the first subsection of the statute says:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he *is in custody in violation of the Constitution* or laws or treaties of the United States.

28 U.S.C. § 2254(a) (emphasis added). By its terms, § 2254 relief thus is available only to state prisoners who currently are being held in violation of an existing constitutional right, not to inmates who at one point might have been able to show that a since-overruled Supreme Court or lower court precedent would have granted them relief. The same is true with respect to the other statutory vehicle for challenging one's custody by a State—28 U.S.C. § 2241(c)(3). "The writ of habeas

corpus," it says, "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."

*Second*, as a practical matter, correcting violations of extant constitutional standards is all that the statute ever could meaningfully require of a State—at least when it comes to a constitutional challenge to the admission of evidence. Even if Desai could show that he is entitled to a new trial because the state courts misapplied the old *Roberts* test, that would not give him a right to a new trial conducted under the old test. The most he could hope for is a new trial in which the state courts would apply the *Crawford/Davis* regime, meaning of course that Adams' *non-testimonial* statement could not be kept out under the Confrontation Clause. As relevant to the constitutional claim underlying Desai's habeas petition, then, the new trial would look like the old trial—which is the epitome of a harmless and therefore uncorrectable error on habeas review. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). If given the chance, Desai no doubt might wish to conduct the new trial differently (he lost after all in the first one) by, say, uncovering new evidence, making different witness choices or deploying still other new trial strategies. And he might well have opportunities denied him in the first trial—for example, the possibility of cross-examining Adams, who presumably could not exercise his Fifth Amendment right in a second trial (as he did in the first trial) in view of the government's dismissal of the charges against him in exchange for his plea in an unrelated case. But all of this does not alter the reality that the constitutional source of his alleged habeas right to a new trial—a Confrontation Clause violation—would not bar the admission of the same statement.

*Third*, contrary to Desai's suggestion, § 2254(d) does not upset this conclusion. It says: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state courts "unreasonabl[y] appli[ed]" Supreme Court precedent, unreasonably found facts in deciding the case or contradicted a relevant Supreme Court decision. 28 U.S.C. § 2254(d). As Desai reads the provision, it permits him to obtain relief so long as he can show that the state courts unreasonably applied *a* Supreme Court decision—and *Roberts* of course is a Supreme Court decision. Yet, as we have held before, this provision states "a necessary, but not a sufficient, condition for habeas relief." *Jackson v. McKee*, 525 F.3d 430, 438 (6th Cir. 2008). Put another way, the provision in effect raises additional hurdles to a habeas claim—additional reasons in the words of the statute why the writ "shall not be granted." 28 U.S.C. § 2254(d). Even if it were true, as Desai argues, that the state courts unreasonably applied the old *Roberts* test, that would mean only that his habeas application cleared that hurdle for obtaining relief, not that he otherwise qualified for relief. Section 2254(a) still requires the applicant to show that he is currently being held in custody in violation of an extant constitutional right.

*Fourth*, *Teague* does not solve Desai's problem. Under *Teague*, federal courts will respect "reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Butler v. McKellar*, 494 U.S. 407, 414 (1990). Just as a State may invoke *Teague* to prevent the retroactive application of a new rule of constitutional law, Desai argues, so a habeas applicant should be able to do the same—here by preventing the federal courts from relying on *Crawford* and *Davis* to defeat his habeas application. We disagree.

In the first place, *Teague*—premised on finality, comity and federalism concerns—*restricted* the kinds of theories upon which habeas applicants could rely in challenging final state-court decisions; it did not purport to announce new gateways for bringing habeas claims. The central basis for *Teague*—respect for state-court convictions when the state courts had no reason to anticipate the Supreme Court's later creation of a new constitutional rule—does not extend to a habeas applicant's efforts to overturn a state-court conviction that is later proved *correct*, albeit for different reasons.

The Supreme Court, more to the point, has said as much. In *Lockhart v. Fretwell*, 506 U.S. 364 (1993), the habeas applicant challenged his capital sentence on ineffective-assistance grounds. In his direct-review appeal, Fretwell had argued that his sentence was unconstitutional under then-existing Eighth Circuit precedent because his sentence turned on an aggravating factor that mirrored an element of the underlying felony murder. *Id*. at 367. The state supreme court rejected the argument not because it was wrong on the merits but because Fretwell had not raised the issue at sentencing. *Id.* In rejecting his ineffective-assistance claim, the United States Supreme Court held that Fretwell was not prejudiced by the error because later Eighth Circuit and Supreme Court decisions took the legs out from under the precedent upon which he had relied. This result, the Court explained, was not "inconsistent with the retroactivity rule announced in *Teague*." *Id.* at 372. *Teague* "was motivated by a respect for the States' strong interest in the finality of criminal convictions, and the recognition that a State should not be penalized for relying on 'the constitutional standards that prevailed at the time the original proceedings took place.'" *Id.* (quoting *Teague*, 489 U.S. at 306). Yet a habeas applicant, unlike a State, "has no interest in the finality of the state-court judgment under which he is incarcerated" because the whole "purpose of his habeas petition is to overturn that judgment." *Id.* at 373. "The result of these differences," the Court concluded, "is that the State will benefit from our *Teague* decision in some federal habeas cases, while the habeas petitioner will not. This result is not . . . a 'windfall' for the State, but instead is a perfectly logical limitation of *Teague* to the circumstances which gave rise to it." *Id.*; *see also Moore v. Anderson*, 222 F.3d 280, 285 (7th Cir. 2000) (noting that "the principle of non-retroactivity favors only the state"); *Flamer v. Delaware*, 68 F.3d 710, 725 n.14 (3d Cir. 1995) (noting that new Supreme Court precedent "may be applied retroactively despite *Teague v. Lane* because *Teague* only applies to a change in the law that *favors* criminal defendants"); *Free v. Peters*, 12 F.3d 700, 703 (7th Cir. 1993) (noting that *Teague* is "a one-way street: designed as it is to protect the state's interest in the finality of criminal convictions, it entitles the state, but not the petitioner, to object to the application of a new rule to an old case").

Confirming all of this is one last data point: "States can waive a *Teague* defense." *Danforth v. Minnesota*, __ U.S. __, 128 S. Ct. 1029, 1046 (2008); *see also Collins v. Youngblood*, 497 U.S. 37, 41 (1990). If the Supreme Court permits a State to invoke *Teague* when it helps the State and to forfeit the defense when it does not, that would seem to epitomize the nature of a one-way defense—one that the State, not the habeas applicant, retains control over injecting into or omitting from a case. *See Delgadillo v. Woodford*, 527 F.3d 919, 927–28 (9th Cir. 2008).

In defending the district court's decision, Desai points out that the cases rejecting his *Teague* argument all involve overruled cases that had a short tenure, whereas *Roberts* ruled Confrontation Clause disputes from 1980 to 2004. That may well be true as a matter of chronology. But this happenstance does not undermine, or even speak to, the rationales underlying these decisions. The most that this distinction might suggest is that Desai had more reason to rely on the *Roberts* doctrine than the other habeas applicants had to rely on the short-lived constitutional doctrines at issue in those cases. But habeas applicants "ordinarily" have no "claim of reliance on past judicial precedents," *Lockhart*, 506 U.S. at 373, and Desai never explains how he is different from the ordinary habeas applicant—how in other words he somehow relied on *Roberts* before undertaking the conduct with which he was charged.

Desai next argues that the district court's approach promotes deterrence by encouraging state courts to apply existing precedent accurately and by punishing them when they do not. As support, he notes that Justice Harlan's dissents in *Williams v. United States*, 401 U.S. 646 (1971), and *Desist v. United States*, 394 U.S. 244 (1969), which provided the foundation for *Teague*, featured deterrence as one of the central goals of the federal habeas statutes. *See Mackey v. United States*, 401 U.S. 667, 675 (1971) (Harlan, J., concurring in the judgment in *Mackey* and dissenting from the judgment in *Williams*); *Desist*, 394 U.S. at 262–63 (Harlan, J., dissenting) ("[T]he threat of habeas serves as a necessary additional incentive for trial and appellate courts throughout the land to

conduct their proceedings in a manner consistent with established constitutional standards."). Encouraging state judges, legislators and executive-branch officials to adhere to the Constitution assuredly is a worthy goal of the great writ. But the theory of *Teague*, the policy underlying § 2254(d) and common sense provide an adequate answer. There is nothing worth deterring when state-court judges reasonably apply *existing* precedent. And there is nothing worth deterring when state-court judges unreasonably apply *overruled* precedent. The goal of the great writ is not to correct the misapplication of overruled precedents.

Desai's final appeal is to fairness, one of the chief characteristics of which is symmetry. As he correctly points out, there is nothing symmetric about giving the State the choice of sidelining unhelpful new Supreme Court precedents when it wishes and of invoking helpful new Supreme Court precedents when it wishes. Just as the State may win a habeas case based on the law then in existence at the time of the state-court decisions, as long as those decisions reasonably applied Supreme Court precedent, Desai submits, so he should be able to win a habeas case based on equivalent grounds—that the state courts unreasonably applied then-existing Supreme Court precedent. Either all parties to a habeas dispute should have the same option, or neither should. But symmetry generally does not figure prominently in criminal law—a tradition that usually favors the individual charged with a crime. Statutory and constitutional criminal-procedure protections all run in favor of the individual, not the State. And the only thing going on here is a recognition that, once the State has satisfied all of these one-way burdens for obtaining a conviction and once a defendant has had a chance to test that conviction on direct review, there is a one-way finality interest in the other direction—one that requires the individual to show why the state courts unreasonably upheld that conviction. That may be why Desai has failed to cite, and we have been unable to find, any federal appellate decision that has granted the writ, whether before AEDPA or after, based on dated Supreme Court precedent that had been overruled by the time the federal courts acted on the application.

While we disagree with the district court's resolution of this issue, that still leaves Desai the option of renewing his other habeas challenges on remand. He also has raised the argument that the introduction of Adams' non-testimonial hearsay statement violates due process, a theory he has yet to exhaust in state court. Because Desai had no reason to raise this claim at his criminal trial or in the Michigan court of appeals in view of the existing *Roberts* doctrine, the district court may wish to give him an opportunity to exhaust that claim in the state courts now.

III.

For these reasons, we reverse the district court's decision.