RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0292p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JASUBHAI K. DESAI,

        *Petitioner-Appellee,*

      *v.*

RAYMOND BOOKER,

        *Respondent-Appellant.*

No. 12-2050

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:05-cv-74243—Marianne O. Battani, District Judge.

Argued: October 2, 2013

Decided and Filed: October 9, 2013

Before: SUTTON and COOK, Circuit Judges; ROSE, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Laura Graves Moody, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Matthew F. Leitman, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Troy, Michigan, for Appellee. **ON BRIEF:** B. Eric Restuccia, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Matthew F. Leitman, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Troy, Michigan, for Appellee. Timothy P. O'Toole, Michael N. Khalil, MILLER & CHEVALIER CHARTERED, Washington, D.C., for Amicus Curiae.

_____

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

––––––––––––––––––

**OPINION**

––––––––––––––––––

SUTTON, Circuit Judge.  In 2001, a Michigan jury found Jasubhai Desai guilty of first-degree murder, and a Michigan trial court imposed a life sentence.  The Michigan state courts affirmed the conviction.  A federal district court granted Desai's habeas petition on the ground that the admission of his co-defendant's non-testimonial statement against interest violated the Due Process Clause of the Fourteenth Amendment.  Because the state courts did not unreasonably apply relevant United States Supreme Court precedent, we reverse.

I.

Anna Marie Turetzky, a nurse, and Jasubhai Desai, a doctor, opened a medical clinic in Trenton, Michigan in 1976.  As their business flourished, their personal relationship soured.  The two fought, and sometimes the fights turned physical.  They tried to resolve their problems by working out of separate clinics, with Turetzky staying in Trenton and Desai working out of a new clinic in Monroe.  The separation did not work.  Tensions escalated, leading to threats of physical and legal harm.  In September 1983, the two agreed to dissolve their partnership once Desai repaid Turetzky for her investment in the Monroe clinic.

On November 7, 1983, the police found Turetzky dead in the front seat of her car in a motel parking lot.  Someone had strangled her.

The police investigated but initially did not find enough evidence to indict anyone for the crime.  The prosecution eventually learned of Lawrence Gorski's 1984 testimony before a federal grand jury, which implicated Desai in Turetzky's murder.  Gorski and his friend, Stephen Adams, had both worked at Desai's clinic.  Gorski testified that, before the murder, Adams had told him more than once that Desai wanted Turetzky killed.  After the murder, Adams confessed to Gorski that he had killed

Turetzky for a few thousand dollars. Adams later visited Gorski in Chicago and told Gorski he was on his way to Arizona because Desai wanted him to leave Michigan.

Wayne County prosecutors charged Desai and Adams with first-degree murder in 1995. The two moved to dismiss the indictment based on the delay between the murder and the charges. That litigation took five years and ended with a ruling against Desai, an unsuccessful petition for certiorari and a still-later trial.

The month-long joint trial of Desai and Adams began in 2001. The prosecution relied on evidence that Desai solicited a hitman in 1982, took out a business insurance policy in June 1983 that would pay him over a million dollars upon Turetzky's death, asked whether Turetzky's body had been found hours before the police discovered it and drove to the scene of the crime that same day. The prosecution also pointed to a non-wage-related, two thousand dollar check the clinic issued to Adams after the murder. And it relied on Adams' confession, in which he told Gorski that Desai arranged to meet Turetzky at a motel but that Adams was there instead and strangled her. The jury found Desai guilty of murder, and the judge imposed a life sentence. The jury failed to reach a verdict with respect to the charges against Adams.

Desai's challenge to the State's reliance on Adams' confession has passed through the state and federal courts once before. During the first pass, he claimed that the admission of Adams' statements violated the Confrontation Clause of the Sixth (and Fourteenth) Amendment. The Michigan Court of Appeals denied relief, and the Michigan Supreme Court denied review. *People v. Desai*, No. 238210, 2003 WL 22515292, at *3–4 (Mich. Ct. App. Nov. 6, 2003); *People v. Desai*, 685 N.W.2d 669 (Mich. 2004). After the district court granted Desai's habeas petition, this court reversed. *Desai v. Booker*, 538 F.3d 424 (6th Cir. 2008). By that time, the Confrontation Clause no longer applied to non-testimonial hearsay such as the friend-to-friend confession from Adams to Gorski. *Compare Ohio v. Roberts*, 448 U.S. 56, 65–66 (1980), *with Crawford v. Washington*, 541 U.S. 36, 60–69 (2004). Whatever the validity of Desai's *Roberts*-based confrontation claim may have been at the time of his trial and

appeal, we held, it did not supply a basis for habeas relief given the subsequent overruling of *Roberts* in *Crawford*.  *Desai*, 538 F.3d at 427.

On remand, the district court stayed the proceedings on the habeas petition and permitted Desai to file a motion for relief from judgment in the Michigan courts to present and exhaust a due process claim.  The Wayne County Circuit Court granted relief to Desai on this basis.  But the Michigan Court of Appeals reversed, and the Michigan Supreme Court denied review.  *People v. Desai*, No. 294287, 2010 WL 3385988 (Mich. Ct. App. Aug. 24, 2010); *People v. Desai*, 803 N.W.2d 323 (Mich. 2011).

Desai returned to the district court.  The court granted Desai's habeas petition based on his due process claim, and the State appealed.

II.

Desai filed his habeas petition after the Antiterrorism and Effective Death Penalty Act went into effect.  We thus must review his claim through AEDPA's deferential lens and may ask only whether the state court of appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d); *see also Brooks v. Bagley*, 513 F.3d 618, 624–25 (6th Cir. 2008) (applying AEDPA deference to alternative ground for decision).  Desai cannot meet this rigorous standard.

The first and most conspicuous failing in Desai's petition is the absence of a Supreme Court holding granting relief on his due process theory:  that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause.  That by itself makes it difficult to conclude that the state court of appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).

To the extent any Supreme Court precedent supports Desai's due process claim, it does so largely in *dicta* and at a daunting level of generality.  The Supreme Court has not held that the admission of the type of evidence at issue here, a codefendant's non-

testimonial hearsay confession, violates due process based on its lack of reliability. What it has done is hold out the possibility that "the introduction" of "evidence" in general could be "so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quotation omitted). Even then, the Court did not elaborate on the meaning of "extremely unfair" or "fundamental conceptions of justice," did not grant relief to the claimant, and acknowledged that, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Id.* That limited due process role makes sense in view of the other lines of defense against unreliable evidence: the constitutional guarantees that produce an adversarial system (counsel, process and confrontation) that itself will test the reliability of evidence, the state and federal rules of evidence and the jury. *See Perry v. New Hampshire*, 132 S. Ct. 716, 723 (2012).

Not only does due process have a limited role to play in backing up these other mechanisms for testing reliability, but it also states an exceedingly general rule. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations," *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)—and, it follows, the less likely a state court's application of the rule will be unreasonable. The state courts concluded that the admission of Adams' non-testimonial hearsay statements did not violate due process for four reasons. The statements fell within an established hearsay exception for statements against penal interest, which contains a reliability theory of its own in this instance: that individuals do not lightly admit to committing murder. *Desai*, 2010 WL 3385988, at *7 (citing Mich. R. Evid. 804(b)(3)). The statements were "voluntary, spontaneous, and without prompting, made to a good friend—and sometimes cohort in criminal activity—to whom he had previously confessed criminal activity, and [] against [Adams'] penal interest." *Id.* at *12. Desai challenged Gorski's credibility through cross-examination and in closing, squarely putting the issue of credibility in front of the jury and alleviating the risk of unfair prejudice from the statements. *Id.* at *13. Ample evidence supported Desai's conviction, "with or without the confession evidence," including Desai's hostility toward Turetzky, his solicitation of another employee to be a hitman, his continued employment

of Adams even after Adams stole prescription pads and forged prescriptions, his desire to gain sole ownership over the clinic, his statements to a potential employee that Turetzky would be gone by Christmas and his return to the scene of the crime. *Id.* at *6, *14. The court reasonably applied the modest guidance found in this area of the law and held that Adams' confession fell outside the narrow category of fundamentally unfair evidence whose admission violates due process.

Desai attempts to fill the void of clearly established law with Confrontation Clause cases. Under those decisions, the Confrontation Clause permitted the introduction of hearsay if it fell within a firmly rooted hearsay exception or carried "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 65–66; *see also Idaho v. Wright*, 497 U.S. 805, 821 (1990) (defining evidence with "particularized guarantees of trustworthiness" as evidence "so trustworthy that adversarial testing would add little to its reliability"). The Supreme Court has not held that those now-overruled Confrontation Clause precedents apply with full force (or any force) to due process challenges to the admission of evidence. *Cf. Perry*, 132 S. Ct. at 728 (explaining the "unwillingness to enlarge the domain of due process" because of the "recognition that the jury, not the judge, traditionally determines the reliability of evidence"). Where, as here, a state court reasonably rejects a rule urged by the claimant but yet to be adopted by the Supreme Court, it does not unreasonably apply established federal law. *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

At any rate, those decisions, even if applied here, would not help Desai. The *Roberts* standard itself was general, making an unreasonable application of it unlikely. *See Crawford*, 541 U.S. at 60, 68 n.10 (2004) (describing the "malleable standard" of *Roberts* as leading to "*inherently . . .* unpredictable" results). Worse still for Desai, this court has upheld the admission of similar statements on similar facts against a similar challenge on direct review. In *United States v. Franklin*, the defendant raised a confrontation challenge to the admission of the hearsay confession of his co-defendant Clarke. 415 F.3d 537 (6th Cir. 2005). Clarke's friend Wright testified before a grand jury that Clarke had confessed to him and implicated Franklin. *Id.* at 543. This court

upheld the admission of Wright's testimony at trial, even though Wright later claimed that the police coerced his testimony, he was drunk when he spoke to Clarke and when he testified, he had a poor memory and Clarke lied frequently. *Id.* at 544–45. In denying Franklin's confrontation claim, this court found Clarke's statements sufficiently reliable under *Roberts* because Clarke could not have expected to gain favor with law enforcement, confessed to an old friend and did not downplay his role. *Id.* at 548. The state court reached an analogous conclusion here. Even accepting for the sake of argument the doubtful proposition that pre-*Crawford* decisions support freestanding due process claims, the state court did not unreasonably apply those precedents. *See Jackson v. Renico*, 179 F. App'x 249, 255 (6th Cir. 2006).

*Ege v. Yukins*, 485 F.3d 364 (6th Cir. 2007), does not fill these gaps. On habeas review, *Ege* held that the admission of expert testimony without any foundation—that a bite mark on the victim established 3.5-million-to-one odds that Ege was the murderer—violated Ege's due process right to a fair trial under *Chambers v. Mississippi*, 410 U.S. 284 (1973) (holding that a state trial court violated a defendant's due process rights by refusing to permit him to cross-examine a key witness based on a flawed state evidentiary rule and by excluding the testimony of other witnesses with exculpatory evidence). *Id.* at 374–78. *Ege* does not advance Desai's claim. Unlike *Ege* (and for that matter *Chambers*), no one claims here that the state evidentiary rules are unconstitutional or were misapplied. And unlike *Ege*, the potential prejudice caused by the application of the two state evidentiary rulings are worlds apart. Foundation-free expert testimony that there is a 3.5-million-to-one likelihood of a match between a criminal defendant and a murderer has few parallels to a statement against penal interest provided by a co-defendant, which has its own indicators of trustworthiness and which in this instance was supported by considerable other evidence of guilt.

Having concluded that Desai's due process claim fails on the merits, we need not reach the State's alternative argument that he procedurally defaulted the claim.

III.

For these reasons, we reverse the district court's decision.