RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0268p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

AHMAD FAWZI ISSA,

        *Petitioner-Appellant*,

    *v.*

MARGARET BRADSHAW, Warden,

        *Respondent-Appellee*.

No. 15-4147

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:03-cv-00280—Sandra S. Beckwith, District Judge.

Decided and Filed:  December 13, 2018

Before:  COLE, Chief Judge; MERRITT, MOORE, CLAY, GIBBONS,
SUTTON, GRIFFIN, KETHLEDGE, WHITE, STRANCH, DONALD,
THAPAR, BUSH, LARSEN, and NALBANDIAN, Circuit Judges.[*]

───────────────

## COUNSEL

**ON PETITION FOR REHEARING EN BANC:** Michael J. Hendershot, Samuel C. Peterson, Brenda S. Leikala, Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON RESPONSE:** S. Adele Shank, LAW OFFICE OF S. ADELE SHANK, Columbus, Ohio, Lawrence J. Greger, Dayton, Ohio, for Appellant.

The court delivered an order denying the petition for rehearing en banc.  SUTTON, J. (pp. 3–9), delivered a separate opinion concurring in the denial of the petition for rehearing en banc.

───────────────

[*]Judge Batchelder and Judge Cook recused themselves from participation in this ruling.

_____

## ORDER

_____

The court received a petition for rehearing en banc. The original panel has reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case.

The petition then was circulated to the full court. No judge has requested a vote on the suggestion for rehearing en banc.

Therefore, the petition is denied.

---

**OPINION**

---

SUTTON, Circuit Judge, concurring in the denial of rehearing en banc. This en banc petition implicates the recurring tension between deciding cases correctly and delegating decision-making authority to three-judge panels of the court.

In my opinion and with all respect to the panel, this case was not decided correctly. At stake is whether Ahmad Issa, an Ohio prisoner convicted of aggravated murder for his role in a murder-for-hire scheme in 1997, is entitled to habeas relief for an alleged Confrontation Clause violation. That clause gives a criminal defendant the right "to be confronted with the witnesses against him" at trial. U.S. Const. amend. VI.

In granting habeas relief, the panel erred in assessing what the Confrontation Clause required at the time of trial and in assessing what the Confrontation Clause requires today.

*First*, no constitutional violation occurred at the time of trial two decades ago—at least not one that AEDPA permits us to correct. The Ohio Supreme Court's decision rejecting Issa's claim was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In 1997, Andre Miles shot Maher Khriss and Ziad Khriss with a high-powered rifle. The day after the murders, Miles told his friends Joshua and Bonnie Willis that Issa had agreed to pay him to kill Maher and described the details of the crime to them. Miles refused to testify at Issa's trial, prompting the State to call the Willises to testify about what Miles had told them. The jury convicted Issa of aggravated murder and recommended the death penalty. The trial court sentenced Issa to death. *See State v. Issa*, 752 N.E.2d 904, 910–13 (Ohio 2001).

When the state courts decided the case, out-of-court statements could be admitted under the Confrontation Clause if they (1) fell within a "firmly rooted hearsay exception" or (2) had "particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). The first prong has nothing to do with this case. Under the second prong, courts determined admissibility based on "the totality of circumstances that surround the making of the statement

and that render the declarant particularly worthy of belief." *Idaho v. Wright*, 497 U.S. 805, 820 (1990). "[C]ourts ha[d] considerable leeway in their consideration of appropriate factors" because no one "mechanical test" determined reliability. *Id.* at 822.

The Ohio Supreme Court reasonably applied that test in rejecting Issa's claim and most assuredly did not contradict the test. In its words:

> Applying [*Lilly v. Virginia*, 527 U.S. 116 (1999)] and [*State v. Madrigal*, 721 N.E.2d 52 (Ohio 2000)] to this case, it is clear that in order to determine whether the admission of evidence concerning Miles's confession violated appellant's confrontation rights, we must examine the circumstances under which the confession was made. Unlike the declarants in *Lilly* and *Madrigal*, Miles was not talking to police as a suspect when he made the out-of-court statement. Miles's confession was made spontaneously and voluntarily to his friends in their home. Moreover, Miles had nothing to gain from inculpating appellant in the crime. In fact, by stating that appellant had hired him to kill Maher, Miles was admitting a capital crime, *i.e.*, murder for hire. Furthermore, Miles's statement was clearly not an attempt to shift blame from himself because he was bragging about his role as the shooter in the double homicide.
>
> We therefore find that the circumstances surrounding the confession did "render the declarant [Miles] particularly worthy of belief." *Madrigal*, 87 Ohio St.3d at 387, 721 N.E.2d at 63, quoting *Wright*, 497 U.S. at 819 . . . . Our decision herein is buttressed by Chief Justice Rehnquist's separate opinion in *Lilly*, in which he noted that in a prior case, the court "recognized that statements to fellow prisoners, *like confessions to family members or friends*, bear sufficient indicia of reliability to be placed before a jury without confrontation of the declarant." (Emphasis added.) *Id.*, 527 U.S. at 147, 119 S.Ct. at 1905, 144 L.Ed.2d at 141 (Rehnquist, C.J., concurring in judgment). Accordingly, we hold that the admission of Bonnie's and Joshua's testimony concerning Miles's confession did not violate the Confrontation Clause.

*Issa*, 752 N.E.2d at 919.

By my count, the Ohio Supreme Court considered ten factors regarding Miles's statements: Miles was not talking to police, was not a suspect, made the statements spontaneously, made the statements voluntarily, made the statements to friends, made the statements in his friends' home, had nothing to gain from inculpating Issa, admitted committing a capital crime, did not attempt to shift blame, and was boasting about what he had done. The Ohio Supreme Court reasonably found Miles's statements reliable and worthy of belief under "the circumstances surrounding the confession." *Id.*

Our panel nonetheless granted Issa relief, holding that the Ohio Supreme Court's decision conflicted with *Wright*'s requirement that courts consider the *totality* of the circumstances in determining the reliability of the out-of-court statements. As the panel saw it, "the Ohio Supreme Court determined that Miles's statements were trustworthy simply because he made them to his friends" instead of the police, without "considering any other facts." *Issa v. Bradshaw*, 904 F.3d 446, 457 (6th Cir. 2018). That alleged deficiency became the springboard for the panel's decision to take a fresh look at the case, then to find that the statements were unreliable, then to hold them constitutionally inadmissible, then to grant the writ. *Id.* at 457–61.

This approach cannot be squared with Congress's mandate that we may disregard state-court decisions only if they are "contrary to" or "unreasonably apply" decisions of the U.S. Supreme Court. The Ohio Supreme Court invoked the relevant cases, quoted several of them, and fairly applied the *Roberts* test to Issa's case. The worst that can be said of the decision is that it did not say "totality" in describing the test. But surely it applied an all-of-the-circumstances test in view of the many criteria—ten—that it mentioned and that reasonably supported the reliability of these statements.

For my part, I cannot identify any other material circumstance the court should have considered.

For its part, the panel identified two circumstances the Ohio Supreme Court should have considered. One is that Miles, long after the murders, testified at Linda Khriss's murder trial (the State believed Linda initially hired Issa to kill Maher, her husband) and at that point denied talking to the Willises. But we have no warrant to take the Ohio Supreme Court to task for neglecting to consider this factor. It is not a permissible factor. Under the *Roberts* test, courts assess reliability based on the circumstances that "render the declarant particularly worthy of belief" at the time. *Wright*, 497 U.S. at 819. Just as one could not say an out-of-court statement became reliable based on corroborating evidence at trial, *id.*, one cannot say a statement became unreliable based on statements at a later trial.

The other circumstance was this: The panel said that, in the course of Miles's friendship with the Willises, Miles often bragged and told stories the Willises weren't sure were true. But

the Ohio Supreme Court did consider this possibility and simply drew a different conclusion about it—that he was boasting and that this reality added authenticity to (rather than subtracted authenticity from) the statements. Either possibility, it seems to me, is reasonable. What's not reasonable is to say that the Ohio Supreme Court's decision is "contrary" to *Roberts* because it could have viewed this circumstance in a slightly different light than the panel viewed it. Find me a totality-of-the-circumstances test in which it is not possible—it's always possible—for the reviewer court to identify another consideration the reviewee court might have addressed or for that matter a consideration the reviewee court might have addressed differently. If we interpret AEDPA to mean that we may identify one factor a state court didn't mention in a totality-of-the-circumstances test, then use that failure to grant habeas relief, that amounts to circumvention of the law, not respect for the modest power it gives us.

How, then, could one conclude that the Ohio Supreme Court did not apply a totality-of-the-circumstances test? Or applied it unreasonably? I do not see a plausible explanation. To accept the panel's conclusion that the decision was contrary to *Wright* and *Roberts* would be to accept that a state-court decision is contrary to clearly established law whenever it fails to mention one word from the U.S. Supreme Court's applicable test, emphasizes some factors over others under a totality test, or draws a different conclusion with respect to one factor under a totality test. Only a most ungenerous reading of the Ohio Supreme Court's decision permits the conclusion that the court failed to consider all of the material circumstances surrounding the statements or applied the test unreasonably.

*Second*, Issa is not eligible for habeas relief for another, freestanding reason: Miles's statements would be admitted today anyway. Under current Confrontation Clause jurisprudence, the statements were readily admissible, making any potential error (including the one identified by the panel) harmless. In *Crawford v. Washington*, the Supreme Court abrogated *Roberts* and later cases applying the "indicia of reliability" test. 541 U.S. 36, 60–68 (2004). It is now clear that only "testimonial statements"—those "made with the primary purpose of creating evidence" for a prosecution—implicate the Confrontation Clause. *Ohio v. Clark*, 135 S. Ct. 2173, 2181 (2015); *see Crawford*, 541 U.S. at 51 (defining testimony as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact" (quotation omitted)).

All of this adds a serious additional obstacle to Issa, as the habeas statute provides relief only for prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Miles did not make the spontaneous statements to his friends solemnly or in order to establish a fact for a trial. He was showing off. His statements were not remotely testimonial and thus did not violate the Confrontation Clause. Because the State does not currently hold Issa in violation of the Confrontation Clause or any other provision of the Constitution, he is not eligible for habeas relief.

Ten years ago, one of our decisions made this precise point. *Desai v. Booker*, 538 F.3d 424, 427–28 (6th Cir. 2008) (holding that the inmate could not obtain habeas relief under § 2254(a) for non-testimonial statements admitted under the pre-*Crawford* regime). The panel should have respected it here.

Think about *Desai*'s point this way. If Issa received what he wants—a new trial premised on the contention that the state courts erred in admitting the Willises' testimony under *Roberts*—it would not do him any good. The State could admit that same testimony in the new trial, this time under *Crawford*'s directive that the Confrontation Clause applies only to testimonial statements. A new trial with the same evidence as the old trial makes any potential error quintessentially harmless, which means the panel erred in granting habeas relief. *Desai*, 538 F.3d at 428; *see Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

The panel shunted *Desai* to the side on the ground that it failed to follow *Fulcher v. Motley*, 444 F.3d 791 (6th Cir. 2006), and *Stallings v. Bobby*, 464 F.3d 576 (6th Cir. 2006), which both granted habeas relief under the *Roberts* test. The point does not stand up. Neither case discussed, or for that matter mentioned, whether *Crawford* applied in this context. They asked only whether *Crawford* applied retroactively because in those cases the decision *helped* the habeas applicants. Neither case thus had any explanation for addressing today's issue because the statements in both cases were testimonial—and therefore *also inadmissible*—under *Crawford*. *Stallings* said exactly that. 464 F.3d at 581. The same was true in *Fulcher*. 444 F.3d at 808 (statements by defendant's girlfriend to police while in custody, while subjected to interrogation and leading statements, and while suspected by police of wrongdoing).

Unjustifiably setting *Desai* to the side is one thing. What makes it worse is to replace it with an approach that comes to the opposite conclusion and violates AEDPA in the process. Congress has authorized federal courts to give habeas relief to a prisoner only when a State presently holds him in violation of his constitutional rights, not to someone who at some prior point was held in violation of the Constitution according to a later-overruled precedent. 28 U.S.C. § 2254(a). There's no other way to read that provision. All in all, the panel's new rule runs headlong into the language of the habeas statute, buries a precedent (*Desai*) that comes to the opposite conclusion, and has no provenance in *Fulcher* or *Stallings*—the two decisions that allegedly gave the panel an explanation for looking anew at the issue in the first instance.

Don't let the timing of *Roberts*, *Crawford*, or this two-decade-old trial distract you. There are *two* independent reasons for denying relief under AEDPA today: No eligible constitutional violation occurred under *any* of the tests at *any* time. Whether one considers the belt for denying relief (that the state-court decision did not contradict or unreasonably apply the *Roberts* test) or the suspenders (that Issa is not currently in custody in violation of the Constitution under the *Crawford* test), the conclusion is identical: The writ cannot issue.

What to do? On the one hand, several considerations support en banc review of this decision. The panel ignored, indeed seemingly overruled, our decision in *Desai*. And in doing so, it precipitated a circuit split. At least one other circuit has followed *Desai* in denying confrontation claims under § 2254(a) when the statements are not testimonial under *Crawford*. *See Mitchell v. Superintendent Dallas SCI*, 902 F.3d 156, 163–64 (3d Cir. 2018). Plus, I have a hard time looking the other way when the statute that gives federal courts this supervisory power requires a showing that the state courts "contradicted" or "unreasonably applied" Supreme Court precedent, when at least the same (if not more) can be said of our panel's decision.

On the other hand, the dispositive hand for me, the number of cases presenting this issue is small and growing smaller. *Crawford* was decided in 2004. It thus would seem to be the rare, perhaps non-existent, non-capital case that will raise the issue today. As for capital cases, the number of cases presenting this issue must be vanishingly small. Even with the snail-like pace of capital-habeas litigation, the number of capital-punishment convictions obtained under *Roberts* leading to habeas claims looked at after *Crawford* must be near zero as well. Consider

what must happen.  You need a capital case that turns on the out-of-court statement of a witness who does not testify.  Then you need a federal habeas decision that the state court contradicted or unreasonably applied the *Roberts* test in admitting the witness's statement.  Then you need a situation in which the evidence, while inadmissible under *Roberts*, would be admissible under *Crawford.*  One could add the condition that the witness must have crossed the international date line before trial without materially shrinking this tiny pool of cases.

Not every error, it's worth remembering, is worth correcting through the en banc process.  That's why a decision not to vote for en banc rehearing, in the words of Judge Harry Edwards, does not "sanction the result [the panel] reached" but simply reflects that it does not justify such a "significant expenditure of judicial energies."  *Bartlett ex rel. Neuman v. Bowen*, 824 F.2d 1240, 1243–44 (D.C. Cir. 1987) (Edwards, J., concurring in the denial of rehearing en banc) (quotation omitted).  The trust implicit in delegating authority to three-judge panels to resolve cases as they see them would not mean much if the delegation lasted only as long as they resolved the cases correctly as others see them.  Last but not least:  We are not the court of last resort.  From time to time, it's worth letting the United States Supreme Court decide whether a decision is correct and, if not, whether it is worth correcting.

For these reasons, I concur in the denial of rehearing en banc.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk